# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

Terry Martin and Dick Villanueva,    )
)    Civil Action No. 2:03-3878-SB
            Plaintiffs,    )
)
        -vs-    )    **O R D E R**
)
Alumax of South Carolina, Inc.,    )
)
            Defendant.    )
_____)



## INTRODUCTION

This matter is before the Court on the Plaintiffs' complaint, alleging age discrimination under the Age Discrimination in Employment Act, with specific reference to 29 U.S.C. § 623(a). The complaint alleged multiple instances of age discrimination in that one or both Plaintiffs were denied promotion to a specified position. The record includes the April 11, 2005, Report and Recommendation of United States Magistrate Judge George C. Kosko, which recommended that the Defendant's Motion for Summary Judgment be granted. The Report and Recommendation was made in accordance with 28 U.S.C. § 636 and Local Rule 73.02 DSC with respect to the duties of Magistrate Judges. See Bowman v. Bordenkircher, 522 F.2d 209 (4th Cir. 1975). Under 28 U.S.C. § 636(b),

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(C), the Plaintiffs filed objections on April 27, 2005. The Plaintiffs object to the Magistrate Judge's Report and Recommendation with respect to only one of the three instances of alleged age discrimination: the Substation Supervisor position for which both Plaintiffs applied. With respect to that position, the Plaintiffs object on the general grounds that (1) the Report and Recommendation minimized or ignored the Plaintiffs' direct evidence of age discrimination and (2) the Report and Recommendation attached undue weight to the evidence proffered by Defendant, specifically with respect to the evidence of the Plaintiffs' qualifications. Each of these objections will be discussed in the following section in a more detailed manner.

To the extent that the Plaintiffs did not object to the Report and Recommendation, this Court is under no duty to review it, under a de novo or any other standard.  28 U.S.C. § 636(b)(1)(C). In this regard, the Magistrate Judge's recommendation is affirmed and adopted. The Court has conducted a de novo review of the portions of the report to which objections were made.  After reviewing the record and applicable law, the Court concludes that the objections are without merit.



## DISCUSSION

### *Direct Evidence vs. Circumstantial Evidence Generally*

Under the ADEA, a claim of age discrimination may be made "either through direct evidence of discriminatory intent, or by using the four-part McDonnell Douglas scheme which provides an inference of discriminatory intent." Karpel v. Inova Health

2

Sys. Servs., 134 F.3d 1222, 1227-1228 (4th Cir. 1998) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). "[I]f a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). Conversely, "[i]f the plaintiff is unable to produce evidence that directly reflects the use of an illegitimate criterion in the challenged decision, the employee may proceed under the . . . analytical framework described in McDonnell Douglas." Stacks v. Southwestern Bell Yellow Pages, Inc., 996 F.2d 200, 202 (8th Cir. 1993).

*The "Younger Man" Comments*

First, the Plaintiffs contend that comments allegedly made by Dave Thompson (age 41) constitute direct evidence of age discrimination. Thompson was one of the two employees who interviewed Plaintiffs for the Substation Supervisor position.[1] The comments allegedly uttered by Thompson were made in the course of explaining to the Plaintiffs that their applications for promotion had been denied. Although Plaintiffs' Objection to the Report and Recommendation indicates that both Plaintiffs heard Thompson utter the same comment, their depositions counter this assertion. Villanueva testified in his deposition that Dave Thompson told Plaintiffs, "we're looking for a younger man that will be with the company eight to ten



---

[1] As the Report and Recommendation assumed that the Substation Supervisor position was "open," this Order will do the same. Cecil Pulley was the other interviewer for the Substation Supervisor position. Beginning in 2001, Pulley served as the General Supervisor of Electrical Maintenance. During the period of the relevant interviews, he was 62 years old, or thereabout. Kerry Farmer serves as Defendant's Plant Manager and is currently 59 years old, or thereabout. Lewis Creel is the Human Resources Manager and is 47 years old, or thereabout. After Thompson and Pulley interviewed the four applicants, Thompson met with Farmer and Creel, when it was decided that none of the four interviewed applicants would be promoted to the Substation Supervisor position.

years," while Martin testified that Thompson said "they were looking for someone younger." These comments will hereinafter be referred to as the "younger man" comments.

The Plaintiffs argue that the Report and Recommendation ignores or diminishes this allegedly "direct evidence" by utilizing contrary evidence that "Thompson denied making the statement and no other applicants heard Thompson make such a remark." Plaintiffs contend that this "creates a classic and garden variety factual dispute on the ultimate issue in the case" and thus should survive a Motion for Summary Judgment. "[O]n a summary judgment motion, the court must 'assess the evidence as forecast in the documentary materials . . . in the light most favorable to the party opposing the motion.'" Bass v. City of Wilson, 155 F.R.D. 130,134 (E.D.N.C. 1994) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)). Therefore, the factual assertions proffered by the Plaintiffs will be taken as true.

– *Direct Evidence*

While the Report and Recommendation viewed the "younger man" comments and others allegedly made by the Defendant's agents through the lens of the McDonnell Douglas framework, it is important, at least initially, to utilize the direct evidence analytical framework as set out in Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989). This is because the Plaintiffs' Objection adamantly asserts that the comments uttered by Defendant's employees constitute direct evidence of age discrimination. And although the Civil Rights Act of 1991 modified the holding



4

in Price Waterhouse,[2] the Fourth Circuit has "suggested that the Price Waterhouse framework still applies to ADEA claims." Mereish v. Walker, 359 F.3d 330, 340 (4th Cir. 2004).

In Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277 (4th Cir. 2004), the court adopted language found in Price Waterhouse v. Hopkins, see 490 U.S. at 277 (O'Connor, J., concurring) and defined "direct evidence" in the negative. The types of comments found not to be direct evidence of discrimination include "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself." In Kneibert v. Thomson Newspapers, 129 F.3d 444 (8th Cir. 1997), the court remarked that "direct evidence may include employer remarks that 'reflect a discriminatory attitude,' or that demonstrate a 'discriminatory animus in the decisional process.'" Id. at 452 (quoting Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991)). With respect to Plaintiffs' evidentiary burden here, "the plaintiff must present evidence which demonstrates 'a specific link between the discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the challenged decision.'" Braziel v. Loram Maintenance of Way, Inc., 943 F. Supp. 1083, 1095 (D. Minn. 1996) (quoting Stacks, 996 F.2d at 201 n. 1).

---

[2] The Civil Rights Act of 1991, specifically Section 107, "modifie[d] the Supreme Court's holding in Price Waterhouse, which held that an employer could avoid liability for intentional discrimination in 'mixed motive' cases if the employer could demonstrate that the same action would have been taken in the absence of the discriminatory motive. Section 107 states that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 1991 Civil Rights Act § 107. See Stender v. Lucky Stores, Inc., 780 F. Supp. 1302, 1306 (N.D. Cal. 1992).

In <u>Bass v. City of Wilson</u>, 155 F.R.D. at 134, the court held that a "statement made by [the employer] to Plaintiff on the telephone--that Plaintiff did not get the job because he had a chance to hire a 'boy from Fuquay-Varina who was a lot younger'" was sufficient evidence that plaintiff "met his burden of presenting direct evidence of intent to discriminate" for summary judgment purposes. Also, in <u>Wilhelm v. Blue Bell</u>, Inc., 773 F.2d 1429, 1434 (4th Cir. 1985), the court found direct evidence of discrimination from many comments made by the Defendant's agents. One comment made consisted of a manager explaining that the defendant company "doesn't want salesmen with good records anymore. . . . [t]hey want young men who can do the work for a lot less money." There were numerous comments like this one that demonstrated a company-wide "intent to replace older salesmen with younger salesmen." <u>Id</u>. at 1433. Another comment which led to the court's finding of direct evidence of discrimination was that plaintiff's immediate supervisor stated "eventually [the defendant company] is going to have $15,000 a year college boys for salesmen. . . . [It] cannot stand these five and six percent commission rates; so, in time they will have all young college guys on a salary. . . ." <u>Id</u>.

However, not all statements with reference to age made by an employer can or should be categorized as direct evidence of age discrimination. <u>See Young v. General Foods Corp</u>., 840 F.2d 825, 829 (11th Cir. 1988). In fact, the "The Fourth Circuit has . . . noted that most age discrimination cases fall into the category of pretext [circumstantial evidence] cases, because direct evidence of improper discrimination is <u>unusual</u>." <u>Malina v. Baltimore Gas & Elec. Co</u>., 18 F. Supp. 2d 596, 605 (D. Md. 1998) (emphasis added) (citing <u>Halperin v. Abacus Corp</u>., 128 F.3d

191, 202 n. 16 (4th Cir. 1997)). In <u>Carter v. Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989), the court stated that "[r]ather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination."

In <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 511-512 (4th Cir. 1994), the court held that a company vice-president's statement that "there comes a time when we have to make way for younger people" was "irrelevant" to the issue of discrimination. "More importantly," the court added, "the statement in itself creates no inference of age bias. [The vice-president's] comment reflects no more than a fact of life and as such is merely a 'truism[ ]' that carries with it no disparaging undertones." <u>Id.</u> at 512.

As previously stated, in order to constitute direct evidence, "the plaintiff must present evidence which demonstrates 'a specific link between the discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion <u>actually</u> <u>motivated</u> the challenged decision.'" <u>Braziel</u>, 943 F.Supp. at 1095 (emphasis added) (quoting <u>Stacks</u>, 996 F.2d at 201 n. 1). Thus, even if this comment, on its face, shows a discriminatory animus of age discrimination, there must still be a demonstrable link between the animus and the decision not to promote Plaintiffs. The decision-makers did not deem <u>any</u> of the four interviewed applicants to be qualified for the position,[3] which thwarts the Plaintiffs' assertion that direct evidence exists here; there is an insufficiency of evidence to

---

[3] Thompson Dep. at 48, 58; Farmer Aff. ¶ 3; Creel Dep. at 47-49, 69; Farmer Aff. ¶¶ 4, 8.

7

support a finding that any illegitimate criterion utilized by the decision-makers <u>actually</u> <u>motivated</u> their decision.

Also, even without analyzing the comments under the above framework, the aforementioned case law militates against a finding of direct evidence of age discrimination. The evidence proffered by the Plaintiffs does not rise to the level of that in either <u>Bass</u> or <u>Wilhelm</u>. The comment in <u>Bass</u>, while similar to Thompson's comment, can be distinguished. In <u>Bass</u>, the employer specifically stated that it hired another applicant because of his youth; Thompson's comment, if taken as true, did not specify that the Defendant selected Mike Heath for the position because the Plaintiffs were older. The instant case is also factually distinguishable from <u>Bass</u> in that there was a "genuine dispute regarding whether [the person hired for the job] was, in fact, more qualified for the position than Plaintiff." 155 F.R.D. at 134. Such is not the case here, where it is undisputed that the Plaintiffs were less qualified than the person finally transferred into the position.

The comment uttered by Thompson is also distinguishable from the numerous comments in <u>Wilhelm</u> in that the Plaintiffs in the instant case have never alleged a company-wide intent to discriminate based on age nor have they adduced any evidence that the Defendant had an intention of replacing all old employees with younger ones. <u>Wilhelm</u> is further distinguishable in that the court based its finding of direct evidence of discrimination on <u>many</u> comments uttered by <u>many</u> of defendant's agents (not just one or two); thus, it is nearly impossible to infer whether the court would have made a finding of direct evidence of discrimination based on only one comment. <u>See</u> <u>Id.</u> at 1433-1434.



8

Thompson's comment is, however, more similar to the comment made in Birkbeck, which was not enough to evidence age bias even though it included some reference to age. In Birkbeck, the court found that the "younger people" comment did not constitute direct evidence of age discrimination because it indicated the natural progression of life rather than an intent to discriminate. Thompson's comment is similar, when taken in context of what was said during the interviews about the Plaintiffs' possible plans for retirement. Both Plaintiffs had talked about their plans to retire from the company within 3 to 5 years.[4] Thus, the comment can be likened to the Birkbeck case in that it indicated the reality of company's need for its own self-preservation as its workforce ages. Also, there seems to be no outright intent to discriminate or contempt for older employees, as seen in Wilhelm, where the person who made the comment was "himself in the protected category" Birkbeck, 30 F.3d at 512, a fact the court used in bolstering its finding of no evidence of discrimination. Similarly, in the instant case, all three decisionmakers were in the protected class. See discussion infra.

Although the above case law explicates only a thin distinction between what constitutes direct evidence and what does not, for the foregoing reasons, the "younger man" comments cannot be considered as direct evidence of age discrimination. The objection in this regard is overruled.

In addition, the comments in question here cannot be seen as "blatant remarks, whose intent could be nothing other than to discriminate on the basis of



---

[4] Boyd Aff. ¶ 10; Martin Dep. at 91; Villanueva Dep. at 81.

9

age," because there have been other reasonable interpretations of the comment. Carter, 870 F.2d at 582. Robert Epps, who also interviewed for the Substation Supervisor position and who was also rejected, testified that "they [the Defendant] were looking . . . down the road [at] what they needed to do to . . . have good supervision in ten years is [the] gist that I got."[5] Epps also testified that his "personal understanding was that . . . they didn't feel like [any] of us w[ere] qualified and they didn't feel like we [were in the] best interest of the company in the long range."[6] Epps' statements indicate that he believed the Defendant was referring to the quality of its supervisors in the future rather than any intent to discriminate on the basis of age. This demonstrates that "the younger man" comments could mean something other than an intent to discriminate, see Carter, 870 F.2d at 582, further undermining the Plaintiff's position.

"To defeat a motion for summary judgment under [the direct evidence] scheme, [a plaintiff] must produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of a stated purpose to discriminate of sufficient probative force to reflect a genuine issue of material fact." O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995) (quoting Clay Printing Co., 955 F.2d at 941) (internal quotation marks omitted). For the foregoing reasons, the "younger man" comments made by Thompson do not constitute direct evidence of age discrimination and did not create a genuine issue of material fact.

In the alternative, even if it may be said that the "younger man" comments

---

[5] Epps Dep. p. 27.

[6] Id. at 29.

2:03-cv-03878-SB    Date Filed 06/24/05    Entry Number 39    Page 11 of 24


do in fact constitute direct evidence of age discrimination, the Defendant will still prevail if it can show it would have made the same employment decision <u>without</u> utilizing age as a factor. That is to say, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." <u>Kneibert</u>, 129 F.3d at 451 (quoting <u>Beshears v. Asbill</u>, 930 F.2d 1348, 1353 (8th Cir. 1991)).

The Defendant argues that the decision-makers did not believe that <u>any</u> of the four interviewed applicants were qualified for the position.[7] They argue that since not one of the four interviewed applicants was qualified, they chose to laterally move another employee to the position. Case law included in the Report and Recommendation is directly on point. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision. <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996) (citing <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 258-59 (1981)); <u>see also</u> <u>Young v. Lehman</u>, 748 F.2d 194, 198 (4th Cir. 1984). Also in the Defendant's favor, and included in the Report and Recommendation, is the case of <u>Dugan v. Albemarle County Sch. Bd.</u>, 293 F.3d 716, 722-723 (4th Cir. 2002), which holds that "'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's [adverse employment action]'" (quoting

---

[7] Thompson Dep. at 48, 58; Farmer Aff. ¶ 3; Creel Dep. at 47-49, 69; Farmer Aff. ¶¶ 4, 8.

DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

As indicated in the record and in the Report and Recommendation, the Defendant puts forth evidence which demonstrates that not one of the decision-makers believed <u>any</u> of the four interviewed candidates had attained a sufficient level of supervisory skills for the job. There were worries over Villanueva's leadership and communication skills[8] and over Martin's ability to be a supervisor and his past disciplinary history.[9]

The Plaintiffs offer evidence they believe demonstrates that they were in fact qualified for the job. They correctly indicate that their interview scores were the two highest out of the four interviewed applicants, and they had both previously served as interim substation supervisor. They add that Villanueva was made Lead Technician of his crew. Although factually correct, this evidence of qualifications falls short of the above standard which indicates that the Defendant's decision does not have to be correct -- it just has to be <u>the</u> reason for not promoting Plaintiffs. <u>Id</u>. Therefore, it matters not that Plaintiffs believed they were qualified; it only matters what their employer perceived. <u>See</u> Abioye v. Sundstrand Corp., 164 F.3d 364, 369 (7th Cir. 1998).

The Plaintiffs likewise adduce evidence in their Objection to the Report and Recommendation which purports to demonstrate that Defendant <u>did believe</u> they

---

[8] Thompson Dep. at 46-47.

[9] <u>Id</u>. at 46.

12

were qualified for the Substation Supervisor position.[10] The two comments made to either or both of the Plaintiffs are relevant only in that the Defendant might have believed one of them would be Substation Supervisor at some time in the future, but the comments do not indicate or bear directly on whether the Defendant thought they were qualified at the time they assigned someone else to the Substation Supervisor position.

There is enough evidence in the record to show that the Plaintiffs' lack of qualifications (at least with respect to the Defendant's perception) was the reason neither were promoted to the position at issue. Thus, although this may be a material fact with respect to the ultimate issue in the case (whether there was discrimination), there is no genuine issue here as to whether the Defendant perceived the Plaintiffs to be unqualified for the position. Because of this determination, even if the Plaintiffs' evidence was direct evidence of age discrimination, the Defendant has demonstrated it would have made the same decision in the absence of that discrimination. See Abioye, 164 F.3d at 369. The Plaintiffs' objections in this regard are overruled.

– *Indirect Evidence*

As discussed above, absent direct evidence, a plaintiff may utilize the McDonnell Douglas burden-shifting framework involving circumstantial evidence of discrimination. See Karpel v. Inova Health Sys. Servs., 134 F.3d at 1227-1228. As set out in the Report and Recommendation, a plaintiff, in order to establish a prima

---

[10] Villanueva had been told by Boyd that he wanted Villanueva to be the next substation supervisor. Plaintiffs' Response Brief, p. 13. Also, Pulley had told Plaintiffs that one of them was going to be the next supervisor.

facie case of age discrimination, "must prove that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." <u>Brown v. McLean</u>, 159 F.3d 898, 902 (4th Cir. 1998).

The first two factors have not been contested and are not in dispute for the purposes of this Order. For the purposes of establishing a <u>prima facie</u> case, if a plaintiff can put forth objective evidence that he was qualified for the position, the third element is satisfied. While there seems to be no qualifications checklist for the Substation Supervisor position, the Plaintiffs argue they were indeed qualified for the position. In their Objection to the Report and Recommendation, they rely on the fact that they performed above-average on their interviews and they had both served as interim Substation Supervisor. The Plaintiffs also added that Villanueva had been made lead technician of his crew. Although Defendant does not feel that the above-average interview scores were relevant, for the purposes of the <u>prima facie</u> case, "the court must 'assess the evidence as forecast in the documentary materials . . . in the light most favorable to the party opposing the motion.'" <u>Bass</u>, 155 F.R.D. at 134 (quoting <u>Charbonnages de France</u>, 597 F.2d at 414 (4th Cir. 1979). Thus, for the purposes of establishing a <u>prima facie</u> case, the Court will assume that the Plaintiffs have satisfied the third element.



The fourth requisite element in establishing a <u>prima facie</u> case is also still in dispute. Determining whether the circumstances of Plaintiffs' rejection "give rise to an inference of unlawful discrimination" is largely a factual issue. However, it is clear

14

that "[i]t is difficult to infer discrimination when the evidence shows persons within the protected class are regularly promoted." See generally Mereish, 359 F.3d 330. Thus, it is helpful to review the Defendant's hiring history with respect to the Substation Supervisor position.

In the instant case, four applicants interviewed for the promotion to the Substation Supervisor position, but none of the four were selected. Instead, the employee who was assigned to that position was Mike Heath, who previously served as the Supervisor in the Computerization Instrumentation Shop. He was 43 years old at the time of his assignment. Heath's successor, Michael Mahaffey, was 41 when he became the Substation Supervisor. Although both men were younger than the Plaintiffs, they were both over 40 at the time of assignment and thus were members of the "protected class" under 29 U.S.C § 631(a). Furthermore, in 1999, Cecil Pulley was 59 years old when he was made Substation Supervisor, making him a few years older than both Plaintiffs at the time they were denied the position. Finally, in 2001, at age 44, Don Rogers was promoted to the at-issue position. This evidence damages the Plaintiffs' contention that the facts give rise to an inference of age discrimination, because it clearly demonstrates a common practice of the Defendant to promote persons within the protected class. See Mereish, 359 F.3d at 338.

The ages of the decision-makers can also aid in the determination of whether this fourth element is met. The Magistrate Judge found that "[w]here the decision-maker is in the same protected class as the plaintiff, it is not likely the decision was motivated by discriminatory animus," citing DeWitt v. Mecklenburg

15

County, 73 F. Supp. 2d 678, 683 (D. Md. 1999), aff'd per curiam, 208 F.3d 208 (4th Cir. 2000); Love v. Alamance County Bd., 757 F.2d 1504, 1509 (4th Cir. 1985). All three decision-makers were over forty: Thompson was 41, Creel was 43, and Kerry Farmer was significantly older at 56 or 57 years of age.

Here, evidence that the Defendant regularly promoted employees over 40 and that the decision-makers were also over 40 themselves weighs heavily in favor of the Defendant. However, as the Court must examine the comments allegedly made in the light most favorable to the Plaintiffs, it could be said the fourth element of the McDonnell Douglas test has been met. Accordingly, the court will assume that the Plaintiffs have established their prima facie case, and will examine the matter further.

By demonstrating a prima facie case, the Plaintiffs have "create[d] a presumption of discrimination" and "the employer may rebut it by articulating a legitimate nondiscriminatory reason for its action." Collier, 934 F. Supp. at 171 (citing McDonnell Douglas, 411 U.S. at 802). "Following such showing, [a p]laintiff may still prevail by demonstrating that the employer's reason was pretextual and that age was a more likely reason for the action. Collier, 934 F. Supp. at 171 (citing Burdine, 450 U.S. 248). For the purposes of summary judgment, a "plaintiff must show that the record contains enough evidence to create a genuine issue of material fact both on the issue of pretext and the ultimate issue of discriminatory intent." Collier, 934 F. Supp. at 171 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)).

In analyzing whether the Defendant had a "nondiscriminatory reason for its



16

action," it is instructive to look at whether the Defendant deemed either Plaintiff qualified for the position. See Abioye, 164 F.3d at 369. Thompson testified that he did not believe Villanueva showed leadership ability and that his communication skills were lacking.[11] He also believed that Villanueva was not a motivated worker, and had been told that Villanueva had been caught sleeping on the job.[12] Lewis Creel, the other interviewer, believed that Villanueva "lacked initiative" and was "not a person who can drive change and lead the organization."[13] Thompson similarly believed that Martin was not qualified for the job. He was concerned about Martin's past attendance and past safety violations and felt that Martin was not "forceful enough to be a supervisor."[14] Creel also believed that Martin lacked leadership ability and could not "drive change."[15] Farmer, who ultimately made the decision not to promote either Plaintiff, testified that he did not feel any of the four interviewed candidates were qualified to be Substation Supervisor.[16] Pulley also agreed that neither Plaintiff was suitable for the position.[17] The evidence is uncontradicted that Defendant's agents did not subjectively consider either Plaintiff (or the two other applicants) qualified for the position. Therefore, Defendant has provided a legitimate

---

[11] Thompson Dep. at p. 46-47.

[12] Id.

[13] Creel Dep. p. 69.

[14] Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment, p. 3; Thompson Dep. p. 46.

[15] Creel Dep. p. 69.

[16] Farmer Aff. ¶¶ 4, 8.

[17] Thompson Dep. p. 43-44.



nondiscriminatory reason for not promoting either Plaintiff.

In addition, the Defendant can proffer another nondiscriminatory reason for its action: the company wanted to rotate existing supervisors in an effort to begin a cross-training program. Farmer and Thompson both testified they had discussions about rotating supervisors in the Electrical Maintenance Department prior to the Substation Supervisor position opening.[18] They finally decided to begin rotating supervisors when they concluded none of the four interviewed candidates were qualified for the position.[19] This move was seen as a "lateral move" with respect to Mike Heath, because he was already a supervisor. This intention, whether or not followed through with, demonstrates that the Defendant had a legitimate nondiscriminatory reason for not promoting either Plaintiff.

The burden now shifts to the Plaintiffs to demonstrate that the two given reasons were merely pretextual. See McDonnell Douglas, 411 U.S. at 804. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 256). In Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000), the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." The Fourth Circuit "has applied the Reeves formulation and has

---

[18] Thompson Dep. pp. 48; 58; Farmer Aff. ¶ 6.

[19] Farmer Aff. ¶ 7.

explained that it operates based on 'the strength of the prima facie evidence in creating an inference of discrimination . . . .'" Price v. Thompson, 380 F.3d 209, 214 (4th Cir. 2004) (internal quotation marks omitted). The court further remarked that, "although Reeves will allow a plaintiff to survive summary judgment without presenting independent evidence of discrimination . . ., it will permit this only where the other evidence of discrimination is sufficiently strong to ensure that the employer is held liable for unlawful discrimination...." Id. at 217 n. 5.

In their Objection to the Report and Recommendation, the Plaintiffs contend they were qualified for the job, but they did not specifically argue that Defendant's beliefs that they were not qualified were unfounded or that they were fabricated. In their Response to Defendant's Motion for Summary Judgment, however, the Plaintiffs argued they could demonstrate pretext because Defendant had proffered differing reasons for its decision not to promote the Plaintiffs. Citing EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852-853 (4th Cir. 2001), they argued that "[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext." This language is permissive and not mandatory for the court to follow. The instant case is factually very different from the Sears Roebuck case in that, "the [c]ourt emphasized the fact that the plaintiff presented uncontroverted evidence of a strong prima facie case--despite his repeated applications, his superb qualifications, and his expressed willingness to accept any available position. . . ." Price v. Thompson, 380 F.3d at 214 (referring to Sears Roebuck). Here, the Plaintiffs were not considered by the Defendant to have superb qualifications, or even those basic skills requisite for performing the job. Therefore, even though the



19

<u>Sears Roebuck</u> case allows conflicting reasons to be treated as pretext, the facts in the present case do not give rise to this presumption.

The Plaintiffs further argue in their objections that the Defendant's plan to rotate supervisors was never implemented, suggesting that the plan was merely a pretext to discrimination. They did not, however, attack the verity of the Defendant's stated intention to do so at any time, either before or after the opening of the supervisor position. Therefore, the Plaintiffs cannot demonstrate that the reasons for refusing to promote them is mere pretext to discrimination. As such, the Plaintiffs have not demonstrated that there exists "evidence to create a genuine issue of material fact both on the issue of pretext and the ultimate issue of discriminatory intent." <u>Collier</u>, 934 F. Supp. at 171 (citing <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502 (1993)). The <u>Reeves</u> framework does not need to be utilized or addressed, because the Plaintiffs have failed to show pretext. Accordingly, the Plaintiffs' objections to the Report and Recommendation are overruled as they relate to the "younger man" comments.

### <u>*"I Told Them Not To Say That" Comment*</u>

In their Objection to the Report and Recommendation, the Plaintiffs argue that Lewis Creel, the Defendant's Human Resources Manager, made a statement upon hearing Thompson's "younger man" comment. They allege Creel said, in Villanueva's presence, "dammit, I told them not to say that." The Plaintiffs believe this comment is further direct evidence of age discrimination and object to the Report and Recommendation because it "wholly ignored" this statement. Once



again, this comment will be evaluated first under the direct evidence standard, then under the McDonnell Douglas standard.

– *Direct Evidence*

The comment allegedly uttered by Creel falls short of direct evidence, because it does not demonstrate, on its face, any discriminatory animus towards the Plaintiffs for age-related reasons. In Carter v. Miami, 870 F.2d at 582, the court stated that "[r]ather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." The comment at issue does not rise to this level.

In Fisher v. Asheville-Buncombe Tech. Comm. Coll., 857 F. Supp. 465, 469 (W.D.N.C. 1993), the court found that "comments [should] not [be considered] direct evidence of discrimination where plaintiff inferred discriminatory intent from the comment," (citing Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988). While Creel's comment could infer age discrimination, it could infer a lot of other things instead. See Glanzman v. Metro. Mgmt. Corp., 290 F. Supp. 2d 571, 579 (E.D. Pa. 2003) (no direct evidence where multiple inferences could be made from Vice President statements to co-workers that he wanted to replace plaintiff with a younger, well-endowed female). As noted above, a co-interviewee interpreted the comment to refer to the quality of the Defendant's future supervisors, and not the age of the current applicants. Thus, it can hardly be said that the intent of the comment "could be nothing other than to discriminate on the basis of age," and therefore cannot be deemed direct evidence of discrimination. Id. Because the discriminatory aspect of the comment allegedly made by Creel must be inferred, it



21

cannot be direct evidence of age discrimination; at best this constitutes circumstantial evidence.

In the alternative, even if this evidence is construed as direct evidence of discrimination, the Defendant has demonstrated, as noted above, that it would still have made the same decision absent such discriminatory animus. This comment also fails to create a genuine issue of material fact under the summary judgment standard, at least with respect to the direct evidence analytical framework.

– *Indirect Evidence*

Turning to the McDonnell Douglas framework, the Plaintiffs can establish the required prima facie case, as discussed above. However, because the Defendant can demonstrate a legitimate nondiscriminatory reason for the employment action which the Plaintiffs cannot establish was pretext, the Plaintiffs' claim in this regard must also fail.

*"Where do you see yourself in 3-5 years" Question*

The Plaintiffs allege, and mention in their Objection to the Report and Recommendation, that Thompson uttered another comment which constitutes direct evidence of age discrimination. They claim that during each of their interviews, Thompson asked them a question to the effect of "where do you see yourself in 3-5 years?"[20] The Plaintiffs stipulate that this question was posed to all of the



---

[20] Villanueva Dep. at 80; Martin Dep. at 65.

22

applicants.[21]

This comment is similar to the Creel's comment discussed above, in that the words could <u>infer</u> the existence of a discriminatory animus, but they also could infer many other things besides such animus. See <u>Glanzman</u>, 290 F. Supp. 2d at 579. Specifically, Thompson and other interviewers testified that the question was asked for the purpose of determining the individual applicant's career goals.[22] Also, neither Villanueva nor Martin believed the question to be inappropriate or even related to age when it was asked.[23] Surely, it is a legitimate business practice to ask interviewees of <u>all</u> ages what their goals for the future might be. Because there are alternate explanations for this question, and the question does not even necessarily involve age, it cannot rise to the level of a "blatant remark[ ] whose intent could be nothing other than to discriminate on the basis of age. . . ." <u>Carter</u>, 870 F.2d at 582. This question is therefore not direct evidence of age discrimination.

In the alternative, even if this does constitute direct evidence of age discrimination, the Defendant would have made the decision to assign Mike Heath to the position without any discriminatory animus. The discussion bearing on this issue has already been set forth and will not be repeated here.

– <u>*Indirect Evidence*</u>

Again, the <u>McDonnell Douglas</u> framework will prove unavailing for the Plaintiffs. While they may be able to establish the required <u>prima facie</u> case, the



---

[21] Plaintiffs' Response to Defendant's Motion for Summary Judgment.

[22] Thompson Dep. at 47-48; Boyd Aff. ¶ 10; Gadsden Aff. ¶ 6.

[23] Villanueva Dep. at 79-80; Martin Dep. at 67-68.

23

Defendant has proffered legitimate nondiscriminatory reasons for its action, which the Plaintiffs have not and cannot prove were pretextual.

## CONCLUSION

Based on the foregoing, it is

ORDERED that the Plaintiffs' objections to the Magistrate Judge's Report and Recommendation are overruled; the Defendant's Motion for Summary Judgment is granted; and this action is ended.

**IT IS SO ORDERED**.

Sol Blatt, Jr.
Senior United States District Judge

June **24**, 2005
Charleston, S.C.



24